**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                          Case No.:    3:13-cr-206-J-32MCR

AMELIO MACK

_____/

**ORDER**

This case is before the Court on Defendant Amelio Mack's Emergency Motion for Compassionate Release (Doc. 119), counseled Supplement to Motion (Doc. 124), and supporting documentation (Doc. 124-1 through Doc. 124-7; Doc. 125-1 through Doc. 125-4). Defendant is a 47-year-old inmate incarcerated at FCC Coleman Low, serving a prison sentence for conspiracy to distribute five kilograms or more of cocaine. (Doc. 45, Judgment; Doc. 114, Order Granting Joint Motion to Grant 28 U.S.C. § 2255 Relief). Defendant seeks early release under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), because he suffers from cerebrovascular disease and has sustained several strokes, which he alleges renders him vulnerable to the effects of Covid-19. The United States opposes the motion because it claims that Defendant did not exhaust his administrative remedies and because the Bureau of Prisons (BOP) is adequately responding to the crisis. (Doc. 126). Defendant filed additional supporting documentation (Doc. 127) and a reply brief (Doc. 131).

1

On September 21, 2020, the Court held a hearing to resentence Defendant and to hear argument on his request for compassionate release.[1] At the hearing, the Court had the opportunity to observe Defendant, to hear statements from Defendant and his relatives about his background and condition, and to consider evidence of Defendant's post-sentencing rehabilitation. At the conclusion of the hearing, the Court resentenced Defendant to a term of 144 months in prison (his original sentence was 235 months). The Court deferred ruling on the Motion for Compassionate Release. For the reasons below, the Motion is due to be granted.

## I.     Compassionate Release

Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, as amended by the First Step Act, § 3582(c) provides in relevant part:

**(A)**   the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

---

[1]    Following the Eleventh Circuit's opinion in Mack v. United States, 782 F. App'x 789 (11th Cir. 2019), the parties filed a Joint Motion to Grant Section 2255 Relief (Doc. 113), which the Court granted (Doc. 114). The Court held the resentencing hearing pursuant to the grant of relief under 28 U.S.C. § 2255.

imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    **(i)** extraordinary and compelling reasons warrant such a reduction …

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Pursuant to its authority under § 3582(c), the United States Sentencing Commission has promulgated a policy statement governing the circumstances when compassionate release is appropriate. See U.S.S.G. § 1B1.13. The policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> **(1)**   **(A)** Extraordinary and compelling reasons warrant the reduction; or
>      **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

The guideline's commentary provides that "extraordinary and compelling

3

reasons" for compassionate release may exist based on the defendant's medical condition, age, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, App. Note 1. As relevant here, these circumstances include:

> **(A) Medical Condition of the Defendant.—**
>
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> **(ii)** The defendant is--
>
> **(I)** suffering from a serious physical or medical condition,
>
> **(II)** suffering from a serious functional or cognitive impairment,
>
> or
>
> **(III)** experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> …
>
> **(D) Other Reasons.--** As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Id., App. Note 1(A), (D).

4

When a defendant moves for compassionate release on his own behalf, the compassionate release statute contains an exhaustion requirement. A district court can reduce the term of imprisonment "upon motion of the defendant" only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf <u>or</u> the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, <u>whichever is earlier</u>." 18 U.S.C. § 3582(c)(1)(A) (emphasis added).[2] The statute

> does not contain an exhaustion requirement in the traditional sense. That is, the statute does not necessarily require the moving defendant to fully litigate his claim before the agency (<u>i.e.</u>, the BOP) before bringing his petition to court. Rather, it requires the defendant <u>either</u> to exhaust administrative remedies <u>or</u> simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court.

United States v. Haney, — F. Supp. 3d —, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) (emphasis in original). Thus, "[t]he 30-day waiting time rule functions as an exception to a plenary exhaustion requirement...." United States v. Vence-Small, — F. Supp. 3d —, 2020 WL 1921590, at *4 (D. Conn. Apr. 20,

---

[2] While some courts have held that the statute's 30-day exhaustion alternative applies only if the warden fails to rule on the inmate's request within 30 days ("the minority view"), <u>see</u>, <u>e.g.</u>, <u>United States v. Smith</u>, — F. Supp. 3d —, 2020 WL 2487277, at *6-9 (E.D. Ark. May 14, 2020); <u>United States v. Weidenhamer</u>, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *2-4 (D. Ariz. Nov. 8, 2019) (describing the interpretive issue), the undersigned is not persuaded by that view. The minority view ignores the plain language of the statute, which says nothing about the warden failing to issue a ruling.

5

2020). As the Sixth Circuit Court of Appeals has held, "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days [of submitting a request to the warden], no matter the appeals available to them." United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020).

In a recent compassionate release case before this Court, the United States advised that the Department of Justice "views the plain language of the First Step Act to allow an inmate to file a motion after 30 days have passed since the request was made to the warden, or after exhausting administrative review, whichever is earlier." United States v. Ruvel Smith, Jr., No. 3:97-cr-120-J-34PDB, Dkt. 148 at 2–3 (M.D. Fla.) (emphasis in original). For the reasons stated in the opinion granting Ruvel Smith compassionate release, the Court agrees with that interpretation of the statute. United States v. Smith, –– F. Supp. 3d —, 2020 WL 5106694, at *3–4 (M.D. Fla. Aug. 31, 2020). Thus, § 3582(c)(1)(A) gives a movant for compassionate release "the option to take [his] claim to federal court within 30 days [of submitting a request to the warden], no matter the appeals available to [him]." Alam, 960 F.3d at 834.

## II. Defendant has satisfied the exhaustion requirement

The United States argues that Defendant failed to satisfy § 3582(c)(1)(A)'s exhaustion requirement, but the Court disagrees. As Defendant has documented, he submitted a request for compassionate release to the Warden

6

of FCC Coleman-Low on September 14, 2019. Defendant requested compassionate release based on having suffered two strokes[3] and other health problems. (Doc. 126-1). On September 30, 2019, the Warden denied the request on the merits. (Doc. 126-2). The Warden acknowledged that Defendant's medical record showed he suffered from cerebrovascular disease, seizure disorder, keratoconus, glaucoma, and aphasia, but determined that he did not meet the criteria for compassionate release because his condition was "stable," non-terminal, and he was not totally confined to a bed or chair. (Id.). However, the Warden advised Defendant that he could appeal through the administrative remedy program. (Doc. 126-2). Defendant did exactly that, filing a Regional Administrative Remedy Appeal on October 5, 2019. (Doc. 126-3). Over four months later, on February 20, 2020, the BOP issued a rejection notice. (Doc. 126-4). The appeals coordinator told Defendant that (1) he should have filed a request for the Warden's review at the institution level before filing an appeal,

---

[3] Defendant has suffered two documented strokes since being sentenced: one on April 7, 2017, and another on April 22, 2019. (See Doc. 124 at 5–7; Doc. 124-1 through Doc. 124-7). However, he also may have suffered a third stroke while at the Nassau County Detention Center on October 10, 2014, three days after sentencing. (See Doc. 124 at 5–6; Doc. 124-1). During this episode, Defendant was sent to the hospital after suffering seizures and vomiting, where he stayed for approximately eight days. (Doc. 124 at 6). At the resentencing hearing, Defendant's counsel explained that the cause of the seizure on October 10, 2014 was reportedly a venous infarction (i.e., a blockage of blood flow) in the left hemisphere of the brain. In other words, Defendant appears to have suffered a stroke on October 10, 2014 as well.

even though the Warden had already rejected Defendant's request on the merits, (2) he should have attempted informal resolution before filing an appeal, even though – again – the Warden had formally rejected Defendant's request, and (3) Defendant did not provide a copy of his institution-level remedy request or the Warden's response. (Id.). Defendant then filed a Central Office Remedy Appeal on March 9, 2020 (Doc. 126-5), which the Central Office rejected in late March or early April 2020 (Doc. 126-6). The Central Office stated that Defendant filed his appeal at the wrong level, that he should have filed the appeal at the institution office level, and that it agreed with the regional office's decision. (Id.).

As the compassionate release statute makes clear, a defendant may file a compassionate release motion either (1) "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). It is undisputed that in September 2019, the Warden of FCC Coleman Low received Defendant's request for compassionate release based on Defendant's history of strokes and cerebrovascular disease, and that more than 30 days have lapsed since then without BOP filing a motion for compassionate release. The Emergency Motion for Compassionate Release is based on the same essential facts as the

8

administrative request: that Defendant suffers from cerebrovascular disease and has sustained multiple strokes, leaving him with cognitive deficiencies and weakness on one side of his body. (See Doc. 119, Doc. 124). That Defendant did not specifically raise Covid-19 in his September 2019 administrative remedy request is not fatal to exhaustion, nor does the government argue that it is. (See Doc. 126 at 5-6); Miller v. United States, — F. Supp. 3d —, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); United States v. Brown, — F. Supp. 3d —, 2020 WL 2091802, at *3-5 (S.D. Iowa Apr. 29, 2020). Defendant "then and now, seeks release due to his myriad serious health conditions. The COVID-19 pandemic merely accentuates his meritorious claims for release." Miller, — F. Supp. 3d —, 2020 WL 1814084, at *2 (internal citation omitted). Accordingly, Defendant has satisfied the statute's exhaustion requirement.

### III. Mack Has Shown Extraordinary and Compelling Reasons

By now, the public is well aware of the threat that Covid-19 presents to health and safety. The Court need not go into detail about how the virus presents special risks to prisoners and prison staff. It suffices to point out that, even under the best of circumstances, and even with the BOP's best efforts, it is especially challenging for prisoners to practice social distancing, proper sanitation, and various other measures essential to preventing the spread of coronavirus. That said, the Court agrees with the Third Circuit Court of

9

Appeals that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). But Covid-19, when combined with the particular circumstances of an inmate and the conditions at their facility, can present a different picture.

The Court finds that Defendant has shown extraordinary and compelling reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13. According to the Sentencing Commission, extraordinary and compelling reasons support compassionate release when a defendant is "suffering from a serious physical or medical condition" or "a serious functional or cognitive impairment" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Application Note 1(A)(ii).

Defendant has submitted ample medical records documenting that, although only 47 years old, he has suffered two or three strokes while in custody and has undergone surgery to repair a hole in his heart (a condition formally called "patent foramen ovale"). (Doc. 124 at 5-11, Doc. 124-1 through Doc. 124-7). According to the medical records, Defendant suffers from cerebrovascular

10

disease and experiences physical and cognitive impairments as a result of these strokes. Defendant's impairments include partial paralysis on the left side of his body and aphasia, which is the loss of the ability to understand or express speech. There is no indication that Defendant will fully recover from these impairments.

In addition to the medical records, the Court had the benefit of observing Defendant and hearing statements from him and his family members at the recent resentencing hearing. Although Defendant is able to stand and speak, it was apparent he had difficulty articulating himself and forming spoken sentences. Defendant stated that after the strokes, life in prison became harder and that his left side feels "heavy." The Court notes that Defendant is reportedly left-handed, which would make his left-sided hemiparesis even more burdensome. Additionally, Defendant's daughter, Brea Brissett, stated that she has observed a decline in Defendant's health and mental acuity since the strokes.

Notably as well, the Court learned that Defendant has an immediate family history of cerebrovascular disorders. Defendant has two older brothers, ages 57 and 59, who are in a debilitated condition as a result of strokes. One of the brothers resides in a long-term care facility where he is nourished through a feeding tube, and is unable to walk or speak. The other brother resides with a caretaker. Along with the fact that Defendant himself has suffered at least

11

two strokes, the family medical history reinforces the Court's concern that Defendant is susceptible to further cerebrovascular accidents.

Moreover, there is mounting evidence that Covid-19 attacks the body's cardiovascular system, leaving those with underlying cardiovascular conditions at increased risk for blood clots, strokes, other cardiovascular or cerebrovascular problems, and death. (See, e.g., Doc. 124 at 7-8; Doc. 127-1).

> Not only is [Defendant] at greater risk for future strokes, but strokes are now being linked to COVID-19. See, e.g., Thomas J. Oxley et al., Large-Vessel Stroke as a Presenting Feature of Covid-19 in the Young, NEJM.org (April 28, 2020), https://www.nejm.org/doi/full/10.1056/NEJMc2009787?amp/= (last visited May 8, 2020). And, according to preliminary CDC data, individuals with neurologic disorders such as stroke and migraine are more likely to require hospitalization after contracting COVID-19. *See* CDC COVID-19 Response Team, Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019 — United States, February 12–March 28, 2020, 69 Morbidity & Mortality Weekly Rep. 382, 384 (Apr. 3, 2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/mm6913e2.htm.

United States v. Jenkins, — F. Supp. 3d —, 2020 WL 2466911, at *6 (D. Colo. May 8, 2020). It is difficult enough for inmates to protect themselves from Covid-19 under the conditions of the prison environment. But that task is even harder where an inmate suffers from physical and cognitive impairments as a result of multiple strokes. And, the potential consequences of the defendant's diminished ability to care for himself are amplified where the defendant suffers from an underlying medical condition – like cerebrovascular disease – that

12

increases his risk of death from Covid-19. Accordingly, Defendant has shown the existence of extraordinary and compelling reasons for compassionate release.

The Court also notes that the number of Covid-19 cases at Defendant's facility has increased since Defendant filed the Motion. At first, only one staff member and two inmates at FCC Coleman Low had been diagnosed with Covid-19. (Doc. 124 at 2). Today, Coleman Low reports that one inmate and 24 staff members are positive for coronavirus, and that one inmate and one staff member have died, and that 219 inmates and six staff members have recovered.[4] Given his medical situation, if Defendant were to contract the virus, he is at risk of a severe, potentially fatal case. The Court need not wait for the virus to afflict Defendant before acting.

## IV. Defendant Will Not Be a Danger to the Community and the § 3553(a) Factors Weigh in Favor of Compassionate Release

The Court must consider two additional questions: first, whether Defendant is a danger to the safety of any other person in the community, as provided by 18 U.S.C. § 3142(g); and second, the sentencing factors set forth under 18 U.S.C. § 3553(a) to the extent they are applicable. See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

---

[4] https://www.bop.gov/coronavirus/. These numbers are updated daily.

The Court considers such factors as "the nature and circumstances of the offense charged," "the weight of the evidence against the person," the "history and characteristics of the person," including the person's "mental and physical condition," as well as "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Defendant was convicted of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Doc. 45). Although Defendant has an extensive criminal record, most of his convictions were for non-violent crimes, consisting primarily of drug offenses. (Crim. Doc. 42, Presentence Investigation Report [PSR] at ¶¶ 38-57). The Court does not minimize the severity of the offense of conviction or Defendant's criminal history. However, while incarcerated, Defendant has attempted to improve himself by completing more than 250 hours of inmate education. And, Defendant has not incurred a single disciplinary report during his six years and eight months in prison. Defendant currently has a security classification of "low," reflecting that he is not a threat to others in the institution. (Doc. 124 at 11). Finally, Defendant's "mental and physical condition" suggests he is not a danger to any other person or to the community. 18 U.S.C. § 3142(g)(3)(A). Having sustained two or three strokes, and suffering from aphasia and hemiparesis (weakness on one side), Defendant is less likely to pose a future risk to the public.

14

Likewise, for many of the same reasons discussed above, the Court finds that the factors set forth under 18 U.S.C. § 3553(a) support granting Defendant compassionate release. Indeed, on resentencing, the Court has already seen fit to vary below the guidelines sentencing range on account of Defendant's post-sentencing rehabilitation and efforts to provide the government with substantial assistance (even if those efforts ultimately did not result in any convictions). The Court adds that Defendant has served 80 months in prison, which is 56% of his 144-month term of imprisonment.

Defendant has also put forth a plan for his release, which the Probation Office has approved. He will reside with his daughter (Ms. Brissett), her husband, and his two grandchildren at his daughter's home. (Doc. 124 at 11). To the extent that Defendant does pose any risk of committing new crimes, the Court is confident that the conditions of supervised release can mitigate that risk. Defendant will know that if he reoffends while on supervised release, he will be subject to arrest and reimprisonment.

In light of the foregoing, and after considering the § 3553(a) factors, the Court finds that Defendant qualifies for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. 1B1.13.[5] Accordingly, it is hereby **ORDERED:**

---

[5] To the extent Defendant requests that the Court order home confinement under 18 U.S.C. § 3624(c)(2) or 34 U.S.C. § 60541(g)(1), the Court must deny that request because only the Attorney General has jurisdiction to decide which prisoners should be released to the home confinement program. See United

1. Defendant Amelio Mack's Emergency Motion for Compassionate Release (Doc. 119) is **GRANTED**.

2. The defendant's previously imposed sentence of imprisonment of 144 months is reduced to **TIME SERVED plus 10 days**, for a release date of **October 23, 2020**. If possible, Defendant should be quarantined pending his release.

3. In addition to the term of Defendant's supervised release stated in his Amended Judgment (Doc. 147), under 18 U.S.C. § 3582(c)(1)(A), Defendant is ordered to serve a "special term" of supervised release of **64 months** (reflecting the unserved balance of his term of imprisonment), to be followed by the regular term of **60 months** of supervised release, for a total term of **124 months** of supervised release. However, after 60 months of successful completion of supervised release, Probation should evaluate whether continued supervision is appropriate.

4. Pursuant to 18 U.S.C. § 3583(d) and U.S.S.G. § 5F1.2, Defendant shall serve the first **24 months** of supervised release under home

---

States v. Calderon, 801 F. App'x 730, 731-32 (11th Cir. 2020). However, as the United States notes, if the Court converts the balance of Defendant's term of imprisonment to a term of supervised release under § 3582(c)(1)(A), it may impose a period of home confinement as a condition of supervised release under 18 U.S.C. § 3583(d) and U.S.S.G. § 5F1.2. (Doc. 126 at 14 n.6).

confinement at Ms. Brissett's residence. Otherwise, the standard conditions of supervised release shall apply.

**DONE AND ORDERED** at Jacksonville, Florida this 13th day of October, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:

Counsel of record
Defendant
Ms. Brea Brissett
United States Probation Office
United States Bureau of Prisons
Warden, FCC Coleman Low